Peter SCARAMUZZO, Plaintiff,

v.

GLENMORE DISTILLERIES,
CO., Defendant.

No. 79 C 1240.

United States District Court,
N. D. Illinois, E. D.

Sept. 25, 1980.

Gregory A. Adamski, Gerald C. Peterson, David A. Genelly, Winston & Strawn, Chicago, Ill., Anthony Scrementi, Chicago Heights, Ill., for plaintiff.

Mark C. Curran, Lawrence I. Kipperman, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Peter Scaramuzzo ("Scaramuzzo") has filed a two–count complaint against his previous employer, defendant Glenmore Distilleries, Co. ("Glenmore"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and common law breach of contract. This cause is now before the Court on Glenmore's (1) motion for summary judgment on portions of the age discrimination claim, (2) motion for summary judgment on the contract claim, and (3) motion in limine to exclude certain evidence at trial.

### SCARAMUZZO'S ADEA CLAIM

Scaramuzzo complains that Glenmore demoted him and then fired him due to his age, and that Glenmore then retaliated against him for filing suit; all in violation of the ADEA. The allegations specify that the demotion took place in May, 1978, and the firing occurred on February 1, 1979. In deposition, Scaramuzzo testified that the alleged retaliatory acts took place on March 28 or 29, 1979.

Glenmore has moved for summary judgment with respect to Scaramuzzo's claims of illegal demotion and retaliation[1] on the ground that plaintiff failed to file charges of unlawful demotion or retaliation with the Secretary of the Department of Labor within 180 days after the alleged unlawful acts occurred, as is required under the ADEA. Section 7(d) of the ADEA, 29 U.S.C. § 626(d) provides in pertinent part that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimi-

nation has been filed with the Secretary. Such a charge shall be filed–

(1) within 180 days after the alleged unlawful practice occurred;

Though in his complaint Scaramuzzo alleges that he has complied with all applicable notice and filing provisions, Glenmore points to Scaramuzzo's Notice of Intent to Sue which was sent to the U.S. Department of Labor on March 23, 1980, and which states as follows:

Pursuant to statute, you are hereby advised that Peter Scaramuzzo intends to sue against Glenmore Distilleries, Co., a Kentucky corporation located at 1700 Citizens Plaza, Louisville, Kentucky 40202, which maintains offices in Chicago, Illinois, for violations of the Age Discrimination in Employment Act of 1967 and the 1978 amendments.

One of the bases of the lawsuit is the unlawful termination of Mr. Scaramuzzo in February, 1979, on account of his age.

This letter constitutes the only charge filed with the Department of Labor by Scaramuzzo. Because this notice fails to specifically allege claims of unlawful demotion or retaliation, and because more than 180 days have passed since the demotion and alleged retaliation, Glenmore contends that these claims are time barred by the 180–day limitation of section 7(d) of the ADEA. Scaramuzzo, on the other hand, argues that Glenmore's three discrete actions were sufficiently related to one another such that Scaramuzzo's claims of retaliation and demotion must be considered to be encompassed in the Notice of Intent to Sue mailed on March 23.[2]

Numerous courts have recognized the similarity between the ADEA and Title VII, and the comparability of their filing

---

1. Glenmore is not challenging Scaramuzzo's claim for unlawful termination at this stage in the proceedings.

2. Scaramuzzo also urges that the 180–day notice requirement not be held to preclude his demotion and retaliation claims because Glenmore's actions constitute a "continuing violation," and because the notice requirement may be tolled if equitable considerations are shown.

Both of these arguments, however, relate to situations where a claimant has filed charges with the administrative agency after the statutory time limit has passed. In the instant case, plaintiff has not filed a *late* charge regarding his demotion and retaliation, but rather he has filed *no charge at all.* Thus, the "continuing violation" and "tolling" arguments are inapplicable.

provisions often has been acknowledged in determining the timeliness of a claim brought pursuant to either Act. *See, e. g., Coke v. General Adjustment Bureau, Inc.,* 616 F.2d 785 (5th Cir. 1980); *Templeton v. Western Union Telegraph Co.,* 607 F.2d 89 (5th Cir. 1979); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979); *Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir. 1975); *Locascio v. Teletype Corp.,* 74 F.R.D. 108 (N.D.Ill.1977).

▋ It is well settled in this Circuit that a claim based upon a violation of Title VII properly may encompass any acts of discrimination similar to, or reasonably related to the allegations made in the charge initially to the EEOC. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Plummer v. Chicago Journeyman Plumbers, Etc.,* 452 F.Supp. 1127, 1141 (N.D.Ill.1978); *Garcia v. Rush–Presbyterian–St. Luke's Medical Center,* 80 F.R.D. 254, 260 (N.D.Ill.1978); *McCray v. Standard Oil Co. (Indiana),* 76 F.R.D. 490, 497 (N.D.Ill.1977). In *Jenkins,* the Court articulated a standard for determining the scope of a Title VII complaint:

> The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that 'the complaint in the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations.' 538 F.2d at 167, *citing Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir. 1971).[3]

Though this standard has not been previously applied to ADEA cases, there is no reason why this Court should not so apply it. *See, e. g., Coke v. General Adjustment Bureau, Inc.,* 616 F.2d 785, 789 (5th Cir. 1980).

Under both Title VII and the ADEA, Congress sought to insure that voluntary administrative conciliation procedures be invoked before suit is filed in federal court. The breadth of the standard set by the Seventh Circuit reflects the fact that an administrative charge only triggers the agency's investigation and its efforts at conciliation. *Jenkins,* 538 F.2d at 168. Any civil action that may be filed subsequent to the administrative charge actually "grows out" of the administrative investigation rather than the employee's specific charge. *McCray,* 76 F.R.D. at 497. Thus, the Court may infer the existence of other discriminatory acts from the allegations contained in the administrative charges. *Id.* at 498.

▋ Like Title VII, the ADEA is a remedial statute that should be liberally construed and broadly applied to effectuate its goal of promoting employment among protected class members. *Kephart v. Institute of Gas Technology,* 581 F.2d 1287, 1289 (7th Cir. 1978); *Bonham v. Dressler Industries, Inc.,* 569 F.2d 187, 193 (3d Cir. 1978); *Locascio v. Teletype Corp.,* 74 F.R.D. 108, 112 (N.D.Ill.1977). In *Kephart,* the Seventh Circuit held that the 180–day notice requirement of the ADEA is not a strict jurisdictional prerequisite to suit in federal court and is subject to equitable modification when necessary to effect the remedial purposes of the statute.[4] In so doing, the

---

**3.** The liberality with which this standard is to be applied is evident from the facts in the *Jenkins* case. In that case the claimant's EEOC charge encompassed only racial discrimination in promotional practices. Her judicial complaint, however, alleged a pattern of racial and sex discrimination in hiring, promotions, assignments, and compensation. The original Seventh Circuit panel held that the EEOC charges limited both the type of discrimination and the number of employment practices that could be challenged in the court proceeding. On rehearing en banc, the Court reversed the panel on the issue of the limitations, allowing plaintiff to proceed with a complaint alleging race and sex discrimination with respect to a variety of employment practices.

**4.** Indeed, though both parties raise arguments regarding the applicability of equitable modification, neither party noted that in 1978 Congress expanded plaintiff's rights under the ADEA by requiring only that a "charge" rather than a "notice of intent to sue" be filed with the Secretary of Labor. The conference committee report accompanying the amendment explains that the "charge" requirement "is not a jurisdictional prerequisite to maintaining an

court quoted approvingly *from Bonham v. Dressler Industries, Inc.,* 569 F.2d 187, 193 (3d Cir. 1978), where the court voiced recognition that the ADEA is

remedial and humanitarian legislation which should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. Circumstances may exist where, notwithstanding plaintiff's failure to comply with the letter of the law, the purposes of the statutory requirement—providing the Secretary of Labor with an opportunity to conciliate while the complaint is fresh and giving early notice to the employer of possible litigation—have been substantially served.

Further support for finding that plaintiff's complaint properly encompasses any discrimination like or reasonably related to the allegations of the charge filed with the Department of Labor is found in the legislative history of the 1978 amendments to the ADEA. This history provides valuable guidance for interpretation of the notice requirements. First, it is important to note that the Senate Report recommended total elimination of the 180–day notice requirement found in section 626(d)(1). In support thereof, the Senate Report explained the purpose of the 1978 legislation:

The purpose of these amendments is to make it more likely that the courts will reach the merits of the cases of aggrieved individuals and do so more expeditiously. . . .

The basic purpose of the notice requirement is to apprise the Department of Labor of any alleged violations of the Act so that the Department may notify prospective defendants and to provide the Department with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation. Failure to timely file the notice as required by section 7(d) has been the most common basis for dismissal of ADEA lawsuits by private individuals. The 180–

day limit has been interpreted as jurisdictional by some courts, and consequently complaints are dismissed. (citations omitted).

In the committee's view, this provides a compelling argument for removing the 180–day notice requirement entirely. Age discrimination is often much more subtle and less well understood than other forms of discrimination and therefore is often not discovered by the victim until long after the alleged act has occurred. S.Rep.No.95–493, 95th Cong., 2d Sess., *reprinted* in [1978] U.S.Code Cong. & Ad. News, p. 515.

The Conference Committee rejected the Senate proposal for removing the 180–day notice requirement and instead amended section 626(d)(1) to require that a "charge" rather than a "notice of intent to sue" be filed with the Secretary of Labor. In making this change the conferees noted:

This change in language is not intended to alter the basic purpose of the notice requirement, which is to provide the Department with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation. *Therefore, the conferees intend that the "charge" requirement will be satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action believed to be discriminatory.* (Emphasis added). H.R.Rep.No. 95–950, 95th Cong., 2d Sess., *reprinted* in [1978] U.S.Code Cong. & Ad. News, p. 534.

Scaramuzzo's letter of March 23, 1980, adequately complies with the letter and spirit of section 626(d)(1) as elucidated by the legislative history of the Act. Scaramuzzo did identify Glenmore as the potential defendant and indicated that his termination was but one manifestation of Glenmore's alleged practice of age discrimina-

action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs. . . ."

H.R.Rep.No.95–950, 95th Cong. 2d Sess., *reprinted* in [1978] U.S.Code Cong. & Ad. News, pp. 504, 534.

tion.[5] In so doing, both the Secretary and the prospective defendant were provided with notice of Scaramuzzo's claim, sufficient to create an opportunity to eliminate the allegedly unlawful practices through conciliation.[6] Accordingly, plaintiffs' motion for summary judgment on portions of the age discrimination claim is denied.

## CONTRACT CLAIM

Scaramuzzo's complaint contains a breach of contract claim in addition to his age discrimination allegations. This claim is based upon his allegations that Glenmore promised Scaramuzzo that (1) he would be discharged only for good cause, and (2) he would retain all corporate responsibilities assigned to him as long as he competently executed such responsibilities. Glenmore argues that an order of summary judgment should be entered against Scaramuzzo because his employment was terminable at will, and that these alleged promises, even if true, do not alter the status of his employment.

Glenmore bases its argument on the premise that any employment relationship that does not specify a time or duration of employment is terminable at will. *Criscione v. Sears, Roebuck & Co.*, 66 Ill.App.3d 664, 667, 23 Ill.Dec. 455, 457, 384 N.E.2d 91, 93 (1st Dist. 1978). The flaw in Glenmore's argument is that it is not clear, as a matter of law, that Scaramuzzo's contract did not specify a duration of employment. A contract that fails to specify the length of the term of employment, but that does set conditions upon which termination may be based, is not terminable at will—it is terminable upon the existence of those conditions.

*Donahue v. Rockford Showcase & Fixture Co.*, 87 Ill.App.2d 47, 230 N.E.2d 278, *on rehearing*, 87 Ill.App.2d 51, 230 N.E.2d 281, 282 (2d Dist. 1967).

Scaramuzzo claims that he entered into a contract setting forth specific conditions upon which he could be terminated. Glenmore argues that Scaramuzzo's contract merely states that he is terminable on five days notice. The resolution of this dispute as to the terms of Scaramuzzo's contract is a fact question, not properly addressed in a motion for summary judgment. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). Accordingly, defendant's motion for summary judgment as to the breach of contract claim is denied.

## MOTION IN LIMINE

Glenmore has moved this Court to enter an order preventing plaintiff from referring to, testifying about, questioning witnesses concerning, or introducing evidence with respect to: (1) any charges of age discrimination filed against Glenmore by persons other than Scaramuzzo; (2) the settlement of such charges by Glenmore; and (3) the terms or conditions of such settlements. With respect to prior settlements and the terms thereof, Rule 408 of the Federal Rules of Evidence states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its

---

5. Scaramuzzo's letter states that, *"One of the bases* of the lawsuit is the unlawful termination of Mr. Scaramuzzo in February 1979 on account of his age." (Emphasis added).

6. In fact, it is likely that any efforts by Scaramuzzo to file specific and separate charges with respect to his demotion and retaliation claims would have been a futile exercise. Scaramuzzo has filed an affidavit by his attorney, wherein the attorney states that according to the Department of Labor, Glenmore refused to conciliate the demotion, firing, or retaliation

charges. The Labor Department representative also advised him that defendant refused to speak with plaintiff's lawyer until the pending lawsuit was dismissed. The purpose of the notice provision of section 626(d)(1) is to facilitate voluntary conciliation of claims. The purpose is not to make claimants jump through a maze of procedural hoops. Claimants should not have to file separate charges for each manifestation of a party's discriminatory practice, when the defendant has indicated that conciliation is impossible.

amount.... This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

■ Though this rule does not appear to go directly to the question of whether a plaintiff may introduce evidence regarding defendant's settlement of other similar cases, the same strong public policy favoring out–of–court settlement that underlies Rule 408 is nonetheless applicable. It would be logically inconsistent to uphold the vitality of Rule 408, while at the same time holding that a settlement offer could be used against the offeror in related cases. An offer of settlement can be of no legal relevance as to the offeror's liability, irrespective of whether the offer was made in the instant case or in a related case. As Professor Weinstein has explained:

> A more common situation involves the attempted use of a completed compromise of a claim arising out of the same transaction between a third person and a party to the suit being litigated. Rule 408 codifies the general practice of the federal courts in making compromise agreements inadmissible in such circumstances as proof of liability for, or invalidity of, the claim or its amount. As the Second Circuit put it:

>> Settlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having settlement proved

in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction.

[*Hawthorne v. Eckerson Co.*, 77 F.2d 844, 847 (2d Cir. 1935).] 2 J. Weinstein, Weinstein's Evidence, ¶ 408[04], at 408–22 (1979).

Of course, as Rule 408 specifies, no evidence otherwise discoverable should be excluded merely because it was presented in the course of settlement negotiations.

■ Glenmore also requests that this Court exclude all evidence of prior charges of age discrimination filed against it by persons other than Scaramuzzo. In considering this question, it is important to distinguish between the fact that formal charges were filed and the facts that may have caused those charges to be filed. The fact that persons other than the plaintiff filed age discrimination charges against Glenmore with the Department of Labor is of minimal probative value. Additionally, the likely effect of such evidence or testimony would be to raise potentially damaging inferences against Glenmore that are not supported by the mere fact that a "charge" had been filed. Accordingly, the Court finds that any probative value of evidence or testimony presented to show that age discrimination "charges" have been filed against Glenmore by persons other than Scaramuzzo, are outweighed by the undue prejudice that would thereby result.[7]

Accordingly, defendant's motion in limine is allowed. Plaintiff is directed to refrain from referring to, testifying about, questioning witnesses concerning, or introducing evidence with respect to (1) the filing of a "charge" of age discrimination against defendant by persons other than plaintiff; (2) the settlement of such charges by defend-

---

7. This is not to say that it would be inadmissible to introduce evidence or testimony regarding Glenmore's prior discriminatory conduct with respect to employees other than Scaramuzzo. Evidence of past age discrimination by an employer may in some circumstances support the inference that such discrimination continued, particularly where relevant aspects of the decisionmaking process have undergone little change. *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). Glenmore's treatment of its older employees is an evidentiary source that plaintiff may tap to prove his allegations of age discrimination. *Cf. Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). Moreover, where the questions of intent and motive are at issue, as they are in this case, defendant's treatment of other older employees is of particular significance. *See* Rule 404(b), Fed.R.Evid.

ant; and (3) the terms and conditions of such settlements. It is so ordered.