Frank **HERMAN,** Frank **Mullaney** and George **Lusson,** Plaintiffs,

v.

**NATIONAL BROADCASTING COMPANY, INC.,** Defendant.

No. 80 C 2207.

United States District Court, N.D. Illinois, E.D.

May 31, 1983.

Bernard M. Mamet, Chicago, Ill., for plaintiffs.

Roger T. Brice, Philip C. Stahl, Reuben & Proctor, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiffs[1] Frank Herman ("Herman"), age 60, and Frank Mullaney ("Mullaney"), age 57, bring this two count complaint against their former employer National Broadcasting Company, Inc. ("NBC") alleging that NBC's failure to consider them for new staff positions, failure to train them for temporary positions and other acts constitute both willful and nonwillful discrete and continuing violations of the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Jurisdiction is asserted pursuant to 29 U.S.C. § 626(b), 28 U.S.C. § 1331[2] and § 1343(4).

Presently before the Court is NBC's motion for partial summary judgment in its favor on all claims of nonwillful violations. For the reasons stated below, NBC's motion for partial summary judgment is granted.

### FACTS

Herman was employed as a full-time film editor in the news department of NBC's WMAQ–TV from 1966 until June 30, 1978. Mullaney was employed as a full-time assistant film editor, also in NBC's WMAQ–TV news department, from 1972 until May 19, 1978. In the Spring of 1978, NBC completed a technological conversion of its news gathering process, changing from film to videotape. Incident to that changeover, a new videotape department was created, known as the "Electronic Journalism Department." On March 14, 1978, NBC solicited applications for six engineering positions in the new department. Both Herman and Mullaney applied. Their applica-

tions were rejected in writing on March 31, 1979, ostensibly because all new positions had been filled. Herman and Mullaney also were informed that their respective applications would be kept on file pending vacancies.

At about the same time as they were rejected for new staff positions, Herman and Mullaney were notified that due to the change to videotape news gathering they would be discharged. Herman's letter of termination was received on April 28, 1978 and announced that his last day of regular employment by NBC would be June 30, 1978. Mullaney's letter of termination was dated March 24, 1978 and indicated that his final employment date would be May 21, 1978. Both letters noted that the impending dismissals were not for any cause attributable to the plaintiffs.

On May 8, 1978 Herman filed an age discrimination charge with the Wage and Hour Division of the Department of Labor and Mullaney filed a similar charge on May 11, 1978.[3] Subsequent to their respective discharges, Herman and Mullaney were hired to perform temporary work at NBC. During the pendency of the EEOC investigation of their charges, Herman and Mullaney complained to EEOC investigators that NBC was continuing to discriminate against them due to their age by failing to train them for the temporary jobs and, despite an avowed hiring freeze, hiring younger persons than they for ultimate promotion to permanent positions. No formal complaints of post-termination violations were ever filed by the plaintiffs with the EEOC.

Herman and Mullaney filed this suit on May 2, 1980. They allege that NBC's failure to hire them for the newly created engineering jobs and certain post-termina-

---

1. By stipulation an additional plaintiff George Lusson was dismissed on January 26, 1981.

2. The Court assumes that the plaintiffs intended to allege jurisdiction under § 133*1*, so-called federal question jurisdiction, although the complaint purports to assert jurisdiction under 28 U.S.C. § 1337, which relates to commercial and anti-trust regulations.

3. Pursuant to a reorganization, the Equal Employment Opportunity Commission ("EEOC") assumed the handling of age discrimination charges. 1978 Reorg.Plan No. 1, Fed.Reg. 19807, 92 Stat. 3781.

tion conduct violated ADEA. Herman and Mullaney do not argue that NBC's decision to terminate them due to technological changes was improper.[4] But, they assert that it was only "at the time of their termination ... that Plaintiffs were able to take an overview of what happened and saw that there was a distinct pattern of discrimination in hire against those 50 years of age and older."

NBC has moved for partial summary judgment on the plaintiffs' allegations of nonwillful age discrimination. According to NBC, a claim for nonwillful age discrimination must be filed within two years of the alleged violation. Since Herman and Mullaney were rejected for the new department on March 31, 1978, NBC argues that this suit is time barred as it was not filed on or before March 31, 1980. Plaintiffs do not dispute the two year limitations period for nonwillful violations of ADEA. Instead they counter the motion for partial summary judgment by characterizing NBC's conduct after their rejections as "continuing violations" of ADEA: each new incident with an independent filing period, unelapsed on May 2, 1980.

## DISCUSSION

ADEA discrimination claims are governed by the following filing time requirement and statutes of limitation: (1) A claimant must file a discrimination charge with the Secretary of Labor within 180 days after the occurrence of the alleged unlawful act. 29 U.S.C. § 626(d)(1); (2) A lawsuit alleging a nonwillful violation of ADEA must be commenced within two years after the occurrence of the alleged violations. 29 U.S.C. § 626(e)(1), incorporating section 6 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 255; and (3) A lawsuit alleging a willful violation of ADEA must be commenced within three years after the occurrence of the alleged willful violation. 29 U.S.C. § 626(e)(1), incorporating section 6 of the Portal-to-Portal Act of 1947, 29 U.S.C. § 255.

NBC concedes that the plaintiffs' allegations of willful discrimination are within the three year limitation period. Whether Herman and Mullaney's claims of nonwillful violations of ADEA are timely, however, is disputed. Resolution turns on isolating the actionable behaviors and pinpointing their occurrence dates. Here the complaint and pleadings allege two discrete violations or classes of violations: the rejections and the continuing violations. Dating the alleged rejection violations is not a problem. Assuming the rejections were discriminatory, the violations occurred on March 31, 1978, the date the plaintiffs were notified of the unavailability of positions in the Electronic Journalism Department. Their respective ADEA charges were filed with the EEOC on May 8, 1978 and May 11, 1978—well within the 180 day filing period.[5]

The two year statutes of limitation for bringing an ADEA suit in federal court for nonwillful violations commences on the same date as the 180 day period for filing a charge with the EEOC, i.e., the violation date. See, e.g., Marshall v. Kimberly Clark, Inc., 625 F.2d 1300 (5th Cir.1980). Thus, a

---

4. Nonetheless, all parties extensively discuss the law governing the filing period relative to discriminatory discharge. Under that law, the trigger point for filing is when the plaintiff is unequivocally notified of an impending termination and not the date on which the termination actually occurs. Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). As the claimed discriminatory act is not NBC's decision to terminate, Chardon and Ricks are irrelevant. However, even if discriminatory termination was claimed, this suit is still untimely. Herman and Mullaney were notified on April 28, 1978 and March 24, 1978 that they would

be terminated on June 30, 1978 and May 19, 1978 respectively. If Herman and Mullaney had wanted to sue on those events, such suits were properly commenced within two years of the notice of discharge—on or before April 28, 1980 or March 24, 1980.

5. Although the exhibits do not indicate the specifics of the charges filed, the Court assumes that the rejections were the focus of the charges. Other allegedly unlawful behavior by NBC had not yet occurred. Nor had the plaintiffs yet formed a suspicion of what they term a pattern of age discrimination by NBC against its employees 50 years and older.

complaint charging discriminatory rejection was due in this Court no later than March 31, 1980. This suit, however, was filed on May 2, 1980.

Regardless, Herman and Mullaney claim that the statute of limitations for filing was tolled because NBC's alleged "continuing violation" occurred sometime after their late May and June 1978 terminations. Under their view, a suit for nonwillful ADEA violations filed on May 2, 1980 is timely. The plaintiffs argue that they told the EEOC about the continuing violations incident to the EEOC's investigation of NBC. The Court does not doubt that the plaintiffs told the EEOC their versions of NBC's post-termination actions and motives. Furthermore, the Court notes that the EEOC investigation of NBC continued at least through 1979. However, those facts are irrelevant to the issue here. Herman and Mullaney misunderstand the legal nature of a "continuing violation" and the effect such a finding has on the timing of ADEA litigation.

▮ A "continuing violation" derives from an ongoing discriminatory policy which adversely affects persons within the protection of ADEA or Title VII.[6] *See, e.g., Roberts v. North American Rockwell Corp.,* 650 F.2d 823 (6th Cir.1980); 2 Larson, "Employment Discrimination" 9A § 48.54 (1980). Unlike a discrete violation, such as a discriminatory discharge, it is difficult to date a violation bottomed on a failure to hire or promote due to the employer's ongoing unlawful policy. For example, where there is proof that a plaintiff has made numerous inquiries of the status of a previously rejected application for hire or promotion, and he is again rejected or put off, the most recent rejection in the continuing series is the violation date. *Roberts v. North American Rockwell Corp., supra; Belt v. Johnson Motor Lines, Inc.,* 458 F.2d 443 (5th Cir.1972).

▮ The effect of finding a "continuing violation" is to toll the 180 day period for *filing with the EEOC.* The last violation, rather than the first in a series, is the triggering event. So long as a plaintiff claims, when he or she eventually files with the EEOC, that there was within the preceding 180 days a present violation and not just the lingering effects of a past violation, the filing is timely. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Farris v. Board of Education,* 576 F.2d 765 (8th Cir.1979). Here the plaintiffs timely filed their charges of unlawful rejection with the EEOC. It is only later that they alleged other or an ongoing series of discriminatory acts. Since the 180 day filing period was met, however, no EEOC filing period for the unlawful rejections need be tolled. The continuing violation doctrine is meaningless under the facts of this case. *See Scaramuzzo v. Glenmore Distilleries Co.,* 501 F.Supp. 727, 729 n. 2 (N.D.Ill.1980).

When Herman and Mullaney filed with the EEOC in April 1978, they unequivocally announced that at least one violation, their rejections for new positions, preceded that filing within 180 days. Those charges of improper rejection were lost unless suit was instituted by March 31, 1980. Plaintiffs' argument that it was only after their respective terminations that they were able to discern a pattern of age discrimination is to no avail. They obviously were suspicious enough of NBC's motives against them before their terminations to file an age discrimination charge with the EEOC. Having properly filed with the EEOC in the first instance, they cannot now ignore the reason for that filing and its applicable limitations' period.

Had Herman and Mullaney timely sued on their charges of discriminatory rejection, they could have raised NBC's post-termination conduct as evidence of a discriminatory

---

**6.** Numerous cases hold that ADEA, like Title VII, is a remedial statute with comparable aims and the law developed in Title VII cases generally is applied to ADEA litigation. *See, e.g., Coke v. General Adjustment Bureau, Inc.,* 616 F.2d 785 (5th Cir.1980); *Kephart v. Institute of Gas Technology,* 581 F.2d 1287 (7th Cir.1978), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

pattern of behavior which NBC allegedly practiced against its older employees or at least against Herman and Mullaney. This Circuit holds, albeit in a Title VII context, that a claim may encompass any acts of discrimination similar or reasonably related to the allegations made in the initial EEOC charge. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). An administrative charge only triggers the EEOC investigation and its efforts at conciliation. *Id.* at 168. Any civil action subsequently filed "grows out of the administrative investigation rather than the employee's specific allegations." *McCray v. Standard Oil Co. (Indiana)*, 76 F.R.D. 490, 497 (N.D.Ill.1977). *See also Scaramuzzo v. Glenmore Distilleries Co., supra*, at 730.

No cases were located, however, which hold that the time for bringing suit on new or old claims is open-ended so long as the initial 180 filing period for the old claim is respected and the new claims are raised in the course of the EEOC investigation. It is possible that an EEOC investigation of NBC could have continued until 1980 or beyond. Also possible is that during the investigation Herman and Mullaney would have remained in NBC's temporary and allegedly discriminatory employ. Under the plaintiffs' theory, if they told the EEOC about any of NBC's so-called continuing violations, they could have stalled suing for the allegedly discriminatory rejections and for the new claims until 1982 or beyond—even though the only EEOC charge was filed in 1978.

ADEA is to the contrary. A suit for nonwillful violations must be brought within two years of the unlawful act. The continuing violation doctrine does not alter that law. After the 180 filing period is met for the later rather than the earlier violation, the two year limitation period inalterably follows. Unless Herman and Mullaney separately filed EEOC charges within 180 days of any violations occurring after March 31, 1978, those claims as well as the discriminatory rejection claims are forfeited.

The Seventh Circuit's recent admonition that in an employment discrimination context all doubts on a jurisdictional point must be resolved in favor of plenary trial rather than dismissal at the pretrial stage is not controlling here. *See Pastrana v. Federal Mogul Corp.*, 683 F.2d 236, 242 (7th Cir.1982) (dismissal inappropriate where issue is whether plaintiff alleged national origin *and* physical handicap discrimination before the EEOC where EEOC intake officer checked only one box despite plaintiff's oral charge of both types of discrimination). Here, there is no question as to when the rejections occurred. The plaintiffs timely filed and described their allegations of rejection in April of 1978. They were not prevented from bringing other claims to the attention of the EEOC at that time: the alleged continuing violations were still in the future. Similarly the plaintiffs did not formally charge NBC with continuing violations in such a way as to fix a timeframe for commencing suit two years after those subsequent violations allegedly occurred. Having failed to sue within two years of the rejections or bring separate charges of post-termination violations, this action is untimely as a matter of law. No genuine issues of material fact on those points remain for trial and partial summary judgment in NBC's favor is appropriate. Fed.R. Civ.P. 56.

■ The plaintiffs' fall back position is that NBC waived its right to raise the statute of limitations by allegedly failing to raise or preserve the defense by answer or otherwise. The plaintiffs are incorrect. First, NBC's answer denies that plaintiffs complied with all procedural prerequisites to bringing an ADEA action. Second, NBC's second affirmative defense is that the plaintiffs' complaint is deficient because it does not assert that the plaintiffs complied with various filing prerequisites under ADEA. Based on NBC's answer and affirmative defense, the Court finds that the plaintiffs were properly apprised of NBC's concerns for the jurisdictional basis of this suit. NBC was not required to specifically

amend its affirmative defense once it discovered the dates critical to this suit. NBC properly filed this motion for partial summary judgment.

IT IS THEREFORE ORDERED that

1. Summary judgment is granted in favor of NBC and against Herman and Mullaney on Count I.

2. Summary judgment is granted in favor of NBC and against Herman and Mullaney on the allegations of nonwillful violations of ADEA made in Count II.

3. The allegations of willful violations of ADEA in Count II remain for trial.

4. A status hearing will be held on June 10, 1983 at 9:30 a.m. to set a date for submission of an amended pretrial order.