MacArthur **BICKHEM**, Plaintiff,

v.

UNITED PARCEL SERVICE, Defendant.

No. 94 C 7524.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 6, 1996.

Armand L. Andry, Law Offices of Armand L. Andry, Oak Park, IL, for plaintiff.

John A. McDonald, John Allen Klages, Keck, Mahin & Cate, Kerry Evan Saltzman, Stickler & Nelson, Chicago, for defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff MacArthur Bickhem ("Bickhem") has filed a two-count second amended complaint against defendant United Parcel Service ("UPS") alleging that defendant failed to promote plaintiff to various management positions because of his race (African–American), in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C.1981 ("Section 1981") (Count I) and the Civil Rights Act of 1964 as amended, 42 U.S.C.2000e *et. seq.* ("Title VII")(Count II). Defendant has moved for summary judgment on all counts. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### PROCEDURAL HISTORY

Plaintiff filed his original complaint on December 19, 1994. By order dated June 7, 1995, the court dismissed plaintiff's complaint for failure to state a claim and granted plaintiff leave to file an amended complaint. On June 23, 1995, plaintiff filed an amended complaint alleging that defendant discriminated against him because of his race by denying him a promotion in 1992, four promotions in 1993, and a promotion in 1995. Defendant filed a motion to dismiss portions of plaintiff's first amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In its order dated October 11, 1995, the court granted defendant's motion and gave plaintiff leave to file a second amended complaint. Plaintiff filed a second amended complaint on October 31, 1995, pursuant to which defendant brings the instant motion for summary judgment.

### FACTS

Plaintiff began his employment with defendant as a part-time Customer Service Telephone Representative ("Telephone Representative") in September 1987. He held this position until December 1990, after which he became a full-time representative. In August 1995, Joe Lemens, a UPS Technology Support Supervisor, recommended plaintiff for the position of Tech I Associate. Plaintiff was promoted to Tech I Associate in the same month, and currently holds this position.

Defendant did not post the opening of management positions when they became available, nor did it publicize the qualifications necessary for such positions. Rather, defendant instructed employees to submit letters of intent, expressing their interest in management positions. To be considered for such a position, an employee had to be recommended by his supervisor.

On May 4, 1989, April 14, 1992, and January 14, 1993, plaintiff submitted letters to UPS management, expressing his interest in management positions and requesting that he be considered for promotion to such positions. In January 1993, Rick Aardsma, Officer Manager of UPS Oak Brook Customer Service Telephone Center, recommended to District Customer Service Manager, Al Czachowski, that Deborah Batovski be promoted to the management position of Account Executive; Batovski was promoted to the position shortly thereafter. From June 1990 until the time of her promotion, Batovski had worked for defendant as a Telephone Representative and, at the time she was promoted, held a bachelor's degree. Both Batovski and plaintiff took defendant's Sales Assessment Test. Batovski scored a 5; plaintiff scored a 3.

In 1994, Rick Aardsma recommended that Caryn Rice, a Customer Service Sales Representative ("Sales Representative"), be placed in the newly created clerical position of Senior Account Executive Associate ("Ex-

ecutive Associate"). At the time of Aardsma's recommendation, Rice was already performing the duties of this position on a part-time basis and was particularly skilled in the use of "Harvard Graphics." Once assigned to the new position, Rice did not receive a salary increase. Defendant asserts that Aardsma did not consider plaintiff for the position of Executive Associate because it was not a management level position, and because it was created to formally recognize the duties that Rice had already been performing.

In February 1995, Lemens recommended Steve Cappitelli, a Telephone Representative, to the position of Tech I Associate, to which Cappitelli was promoted shortly thereafter. At the time of Lemens' recommendation, Cappitelli was pursuing a bachelor's degree in computer science. Prior to this promotion decision, both Cappitelli and plaintiff took a written test which, defendant asserts, was designed to measure their DOS computer knowledge. Cappitelli scored higher on the test than plaintiff.

In January 1994, Mike Donoghue, an on-car supervisor at defendant's Bedford Park facility, was transferred to a Human Resource Representative position. From January 1988 until the time of his transfer, Donoghue held various management positions with defendant. Donoghue received a bachelor's degree in Human Resources in December 1992.

In Count One,[1] plaintiff asserts that, in making the aforementioned promotion decisions, defendant discriminated against plaintiff in violation of Section 1981. In Count Two, plaintiff alleges that defendant's decision to promote Batovski to Account Executive in January 1993[2] constituted race discrimination in violation of Title VII.

**1.** In his second amended complaint, plaintiff erroneously referred to Count One as Count Two in a heading. In its motion for summary judgment, defendant addressed plaintiff's arguments for both Count One and Count Two, but erroneously referred to Count One (Section 1981 claim) as Count Two (Title VII claim) and Count Two as Count One. Because plaintiff's arguments on both counts are similar, and because defendant's motion addresses plaintiff's arguments on both counts, the court finds no prejudice in the typographical errors of both parties and rules on

## DISCUSSION

### I. *Summary Judgment Standard*

A court should grant summary judgement if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The simple assertion that a factual dispute exists is not enough to defeat a Rule 56(c) motion. To defeat a motion for summary judgement, the non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-moving party. *Id.,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

### II. *McDonnell Douglas Framework*

Section 1981 of Title 42 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens." The right includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Title VII makes

defendant's motion for summary judgment on all counts.

**2.** Plaintiff's second amendment complaint, paragraphs 38 and 45, alleges that defendant violated Title VII by promoting Ria Karanavos to Account Executive and Caryn Rice to Senior Account Executive in 1993. However, defendant's answer states, and plaintiff does not contest, that plaintiff has agreed to voluntarily withdraw paragraphs 38 and 45.

it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a)(1).

To set forth an individual case of intentional discrimination under Section 1981 or Title VII, a plaintiff has two options: he may satisfy his burden of proof by offering direct evidence of discriminatory intent; or he may demonstrate such intent indirectly by following the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence. *Sample v. Aldi*, 61 F.3d 544, 547 (7th Cir.1995). Thereafter, the defendant has the burden of articulating a legitimate non-discriminatory reason for the adverse action. *Id.* Once the defendant meets his burden of production, the presumption of discrimination created by the prima facie case disappears, and the plaintiff must demonstrate that the defendant's proffered reasons are merely a pretext for discrimination. *Id.* At all times, the plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *Id.*

To make a prima facie case in a failure to promote case, the plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was rejected for the position sought; (3) the defendant rejected him for such a position; and (4) the defendant granted the position to an employee of a different race with similar or lesser qualifications. *Id.* In this case, neither party disputes that plaintiff has met the first three elements of his prima facie case. With respect to the last element, defendant argues that the persons promoted to the four positions at issue were more qualified than plaintiff. Plaintiff denies this assertion. Addi-

tionally, plaintiff argues that, to establish a prima facie case, he is not required to show that he meets the employer's subjective qualifications, *see Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132 (7th Cir.1985) [3], nor is he required to show that he is at least as qualified as the person(s) promoted. Citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), plaintiff asserts that, to meet the fourth element of his prima facie case, he need only show that someone of a different race was promoted over him, not that the person promoted had similar or lesser qualifications.

On at least one occasion, this court has applied the prima facie elements for a Section 1981 case as set forth in *Patterson*, which does not require the plaintiff to demonstrate relative qualifications as part of the fourth prong. *See Lewis–Kearns v. Mayflower Transit, Inc.*, 932 F.Supp. 1061 (N.D.Ill.1996). In any event, given that defendant has met its burden of production by articulating a legitimate non-discriminatory reason, this court need not address further the merits of plaintiff's prima facie case. *Sample*, 61 F.3d at 548 ("'Where the defendant has done everything that would be required of him had the plaintiff properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.'") (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). To withstand defendant's motion for summary judgment, plaintiff must demonstrate that defendant's reasons for promoting employees other than plaintiff to the four positions in question are merely pretext for discrimination. *Id.*

### III. *Plaintiff's Attempt to Demonstrate Pretext*

Plaintiff may show pretext by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Com-*

---

**3.** Defendants do not contest this. This court agrees that plaintiff, in establishing a prima facie case, is required to show only that he met the

objective qualifications for the position sought. *See Jayasinghe*, 760 F.2d at 132.

*munity Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *see also Weihaupt v. American Medical Association,* 874 F.2d 419, 428 (7th Cir.1989) (in ADEA case, plaintiff may show pretext by showing that: (1) the reasons proffered by the defendant had no basis in fact; (2) the proffered reasons did not actually motivate defendant's decision; or (3) the reasons were insufficient to motivate defendant's decision). Here, defendant has set forth a legitimate non-discriminatory reason for not promoting plaintiff to the four positions at issue: the employees promoted were more qualified for those positions than plaintiff. Plaintiff responds that defendant's promotional process is without standards, that defendant's proffered non-discriminatory reasons are "phony," and that, therefore, he has met his burden of showing pretext. With respect to three of the four promotion decisions at issue, this court disagrees.

 As both parties concur, defendant's promotional decisions are based on the recommendation of an employee's supervisor and various objective and subjective criteria. The fact that defendant's employees must be recommended by a supervisor to be considered for promotion does not, in itself, demonstrate pretext. *See Sample,* 61 F.3d at 546 (finding no demonstration of pretext where position of "director supervisor" was eligible for promotion only upon recommendation of general manager). Further, defendant's use of subjective factors (e.g., interpersonal skills) in its decision to promote employees does not, standing alone, demonstrate bad faith. *Weihaupt,* 874 F.2d at 429.

In arguing that defendant's reasons for failing to promote him on four occasions are "unworthy of credence," plaintiff offers much evidence that he was qualified for the positions at issue at the time that the promotion decisions were made. Defendant does not dispute that plaintiff received favorable performance evaluations throughout his employment with defendant, nor does defendant allege that plaintiff's work was ever "substandard." Defendant simply argues that plaintiff was not as qualified as the employees it chose to promote.

 As the Seventh Circuit has stated, "[t]he fact that plaintiff does some things well does not mean that any reason given for his firing is a pretext for discrimination." *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 403 (7th Cir.1992). Further, "[p]roof of generally adequate performance ... may not be used to rebut a specific reason for [an adverse employment action]." *Id.* at 404, n. 2. These pronouncements are particularly applicable to plaintiff's allegations of discrimination in defendant's promotion decisions for Executive Associate, Human Resources Associate, and Tech I Associate. For none of these positions does plaintiff contend that the white employees promoted were unqualified, nor does he attempt to compare his qualifications with those of the employees promoted. Defendant, on the other hand, has produced extensive evidence, including performance evaluations and affidavits, to support its position that its promotion decisions were based on relevant criteria and that, based on such criteria, the promoted employees (Rice, Donoghue, and Cappitelli) were better qualified than plaintiff.

 Although plaintiff is not required to show that he was better qualified than the white employees who were promoted to establish pretext, *Patterson,* 491 U.S. at 187–88, 109 S.Ct. at 2378–79, plaintiff must prove pretext in *some* manner by a preponderance of the evidence, *Sample,* 61 F.3d at 547. With respect to the position of Executive Associate, plaintiff fails to offer any evidence to suggest that he had expressed an interest to defendant in being promoted to such a non-management-level position. Further, plaintiff admits that he knows little about Rice's educational background and work experience; he nonetheless insists that he was more qualified than Rice because he helped train her on one occasion. Defendant rebuts, and plaintiff does not dispute, that: (1) the position of Executive Associate involved tasks that Rice was already performing; (2) her "promotion" to the position did not provide her with a salary increase; and (3) the position was not management-level. Without more, plaintiff has failed to demonstrate pretext in defendant's decision to promote Rice, and not plaintiff, to the position Executive

Associate. Defendant's motion for summary judgment on this claim is granted.

■ With respect to the position of Human Resources Associate, it is undisputed that, at the time Donoghue was promoted to the position, he had already held management positions with defendant and had a bachelor's degree in human resources. In contrast, plaintiff did not have any management experience with UPS, did not hold a degree in human resources, and had never worked in a human resources position in his entire career. Plaintiff attempts to show pretext simply by offering his opinions about his qualifications and his disagreement with defendant's decision not to promote him. Without further evidence of pretext, this court declines to second-guess defendant's business decisions. *See McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992). Thus, defendant's motion for summary judgment on plaintiff's claim based on defendant' failure to promote him to Human Resources Associate is granted.

■ In comparison to the positions of Executive Associate and Human Resources Associate, plaintiff offers more evidence to show that he was qualified for the position of Tech I Associate; yet, once again, the evidence falls short of demonstrating pretext. Plaintiff admits that Cappitelli's DOS-based computer skills (which, plaintiff concedes, are important for the position of Tech I Associate), were superior to his, and that he has asked Cappitelli for assistance in the past. Cappitelli also scored higher than plaintiff on a DOS-based computer test. Plaintiff's only specific allegation of pretext is that defendant promoted plaintiff to Tech I Associate in August 1995—just months after plaintiff sued defendant over its decision to promote Cappitelli in February 1995. However, it is also true that plaintiff's original complaint—alleging racial discrimination in defendant's failure to promote plaintiff to a management position—was filed on December 19, 1994, which was well before either defendant's decision to promote Cappitelli or defendant's decision to promote plaintiff to Tech I Associate. Based on these and other facts in the record, plaintiff has failed to show pretext by a preponderance of the evidence for defendant's decision not to promote him to Tech I Associate in February 1995. Accordingly, the court grants defendant's motion for summary judgment on this claim.

Unlike the reasons defendant offers for its decision not to promote plaintiff to Executive Associate, Human Resources Associate, and Tech I Associate, defendant's reasons for its decision not to promote plaintiff to Account Executive in January, 1993 are much more subjective and, consequently, make plaintiff's showing of pretext easier. First, defendant admits that it decided to promote Batovski largely because Aardsma believed that Batovski had better interpersonal skills than plaintiff. Plaintiff rebuts that Aardsma had a communication problem with blacks. Second, defendant points to the fact that Batovski, unlike plaintiff, had a bachelor's degree in January, 1993. However, unlike the connection between Cappitelli's computer training and the Tech I Associate position, there is no suggestion of a direct link between Batovski's degree and the duties of an Account Executive. Third, plaintiff had seniority over Batovski; both plaintiff and Batovski were Telephone Representatives but, as plaintiff points out, plaintiff had been in that position several years longer than Batovski. Fourth, while defendant emphasizes that plaintiff scored lower than Batovski on a sales assessment test, the record is clear that defendant did not rely on these scores in its promotion decision. In fact, plaintiff did not even take the test until after Batovski was promoted. Finally, plaintiff highlights the fact that defendant did not promote a single black employee to any management position in the Oak Brook office from 1987 to 1993. Although, by itself, this evidence would not prove an individual disparate treatment claim, *see Sample*, 61 F.3d at 551, the court may consider it at this stage.

■ Based on the record before it, this court finds that plaintiff has created a genuine issue of material fact as to whether the real reason defendant did not promote him to Account Executive in January 1993 was his race. Defendant's motion for summary judgment on plaintiff's Section 1981 and Title VII claims relating to this decision is denied.

## CONCLUSION

Based on the foregoing analysis, defendant's motion for summary judgment on plaintiff's Section 1981 claims relating to defendant's failure to promote him to the positions of Executive Associate, Human Resources Associate, and Tech I Associate is granted.

With respect to defendant's January 1993 promotion decision for Account Executive, however, plaintiff has demonstrated a genuine issue of fact whether defendants' professed reasons for promoting Batovski were pretext of discrimination. Accordingly, defendant's motion for summary judgment on plaintiff Section 1981 and Title VII claims relating this decision is denied. Plaintiff is directed to file an amended complaint in conformance with this opinion on or before December 16, 1996. Defendant shall file its answer thereto on or before January 3, 1997. The final pretrial order, conforming to this court's standard form, shall be filed on or before January 31, 1997; the answers to any motions in limine shall be filed on or before February 10, 1997. The final pretrial conference shall be held February 21, 1997, at 8:30 a.m. The case is set for the trial call beginning April 7, 1997.

